## Sproul v. Inter-State Coal Company.

(Decided February 14, 1919.)

### Appeal from Knox Circuit Court.

Boundaries—Survey—Patent.—When the lines of a patent were not in fact run upon the land in the survey upon which it was based, and it cannot be determined from the calls of the patent with certainty what land it includes, if any, the patent will be held void for uncertainty.

J. D. TUGGLE and W. R. LAY for appellant.

BLACK, BLACK & OWENS for appellee.

Opinion of the Court by Judge Clarke—Affirming.

As was stated in the opinion upon the former appeal of this case, which is reported in 160 Ky. 211, and contains copies of the map and patents referred to herein, J. C. Sproul brought this suit against the Inter-State Coal Company to recover 25 acres of land which, as he alleged, was covered by a patent from the Commonwealth to his brother, G. W. Sproul, of date October 28, 1891, and had been conveyed to him by the patentee.

This patent upon the former appeal was held to be void for uncertainty. Upon the return of the case, plaintiff introduced more evidence than on the first trial, tending to prove that the white oak, which is located at figure 9 on the map, was a corner to the A. Legere patent, and the beginning corner of his patent, and that the chestnut, Berry Lathram's corner, called for as a corner in his patent, is a well known object and located at figure 3; he also introduced new evidence in an attempt to show that his patent might be closed from figure 1, to reach which all called for courses and distances had been disregarded, by following some eighteen or more lines of a 200 acre Lunsford survey, not referred to in the evidence upon the former trial, to his beginning corner, the white oak on the road at figure 9. It will be noticed that the only calls in his patent from the Spanish oak, Lathram's corner, located at figure 1 on the map, to his beginning are "thence E. 25 poles to a Spanish oak, Lunsford's corner; thence with Lunsford's line to the beginning," which rather clearly indicates that the survey was to be closed from Lunsford's Spanish oak corner by one or possibly more lines of his 100 acre patent previously referred to in plaintiff's patent, and it does not seem to have occurred until quite recently to plaintiff, who himself made this survey, that this was a reference to Lunsford's 200 acre survey; so we do not think this effort to close his survey conforms in any substantial manner with the calls of his patent, or that the new evidence introduced by him upon the last trial upon this question was any more satisfactory than the theory advanced by him for closing the patent upon the former trial, which was rejected by this court; but even if we might concede that the theory now advanced by him for closing his survey is a possible compliance with the calls of his patent, it would still be impossible in our judgment upon his evidence upon the last trial, to make his patent cover the land in controversy or any land.

He testified that he made the survey for his brother upon which his patent was issued; that he had theretofore twice surveyed for Lunsford the processioner's lines around his lands,.including the public road from 9 to 14 on the map, and that there was at that time a fence from 14 to Lathram's chestnut corner at figure 3; he further admits he did not make an actual survey of the lines supposed to connect his white oak and chestnut corners, and it is apparent from reading the Legere patent that to connect these corners he simply copied the calls from the Legere patent, because both his patent and the Legere patent to connect the white oak and chestnut call for substantially the same courses and identical distances, which by survey do not even approximately connect these two corners. As stated in the former appeal, this same uncertainty as to the proper location of the connecting lines between the white oak and chestnut had resulted more than twenty years before in a controversy between Lunsford and Ballou, who then owned the Legere patent, by whose respective contentions these patents overlapped, and that they had in 1871 settled this controversy by having the lines processioned, and which were thus located so as to run with the county road, the crooked dotted line from 9 to 14, and with the fence from 14 to 3; so that when plaintiff attempted to locate his survey and patent in 1891 and copied from the Legere patent two intervening lines supposed to connect the white oak and chestnut, which he did not survey and which did not accomplish this result, he must have known that the lines of the Legere patent which connected the white oak and chestnut had been definitely located upon the land by processioners for the adjoining land owners, and that the error in the courses and distances by which these lines were described in the Legere patent, had been corrected by the visible and marked line between the white oak and the chestnut, running with the county road and the fence, as indicated by the line 9 to 14 to 3 on the map, and he cannot now get away from this long established location of these lines by a resort to a method of survey which would have been acceptable in the absence of an established, marked and known location theretofore made by the parties upon the land, because of the familiar rule that courses and distances and approved methods of surveying them, must yield to known objects and monuments called for, and here the Legere lines called for were, as

they had been located and marked on the ground, known objects, just as were the white oak and chestnut corners.

When plaintiff's lines connecting the white oak and chestnut are run with the lines of the Legere patent called for as they had been established, and of which plaintiff must have known before he made his survey, they coincide with the lines of the Lunsford 200 acre survey, which he now claims as his closing lines, but which evidently was not so regarded when the survey was made, as the reference in the patent is only to Lunsford's 100 acre patent; nor does such a possibility seem to have occurred to plaintiff himself until after the first trial of the case.

It is therefore apparent that even if we accept the introduction upon the last trial of the 200 acre Lunsford patent, as affording a possible basis for closing plaintiff's survey from the Spanish oak called for in his patent as Lunsford's corner, the location of his patent is shown to be even more indefinite and impossible than upon the first trial, because running with Legere's lines as they had been located and were then visibly marked upon the land, the first two lines of his patent pass along the eastern side of the land in controversy and coincide with his closing lines, and therefore include not only none of the land in controversy, but no land whatever. Consequently the trial court did not err in sustaining, at the close of the evidence introduced in plaintiff's behalf, the defendant's motion for a peremptory instruction.

Wherefore the judgment is affirmed.